[No. 4805.    Decided January 11, 1904.]

THE STATE OF WASHINGTON, *on the Relation of J. Z. Moore et al., as the Board of Regents of the State University, Plaintiff,* v. S. A. CALLVERT, *as Commissioner of Public Lands, Defendant.*

STATE SCHOOL LANDS—APPROPRIATION FOR USE OF UNIVERSITY—CONSTITUTIONALITY—LEGISLATIVE POLICY—CONSTRUCTION OF PUBLIC GRANT. Laws of 1903, p. 137, § 1, and Laws 1893, p. 299, § 9, as-

1Reported in 74 Pac. 1018.

signing and directing the selection of 100,000 acres of state lands for the support of the state university, are not unconstitutional on the theory that inasmuch as § 14 of the Enabling Act makes a special provision of 42,080 acres for the university, the intent was to exclude it from the benefits of § 17, granting 200,000 acres for "state, charitable, educational and reformatory institutions;" since no educational institution is excluded from the benefits of said grant, and the amount that may be appropriated therefrom to the use of any one institution is a question of public policy, to be determined exclusively by the legislature.

Application for a writ of mandamus, filed in the supreme court September 10, 1903. Writ granted.

*John H. Powell,* for relators.

*The Attorney General,* for defendant.

DUNBAR, J.—This proceeding is brought to compel the commissioner of public lands to make the selection of university lands as required by the act of the legislature of 1903. Section 1 of said act, on page 137, is as follows:

"The commissioner of public lands is hereby authorized and directed to ascertain how much land granted to the state for university purposes, by section 14 of the enabling act, approved February 22, 1889, remains unsold, and to select from the lands granted to the state of Washington by section 17 of the said enabling act for state, charitable, educational, penal and reformatory institutions, 100,000 acres thereof, assigned for the support of the university of Washington by section 9 of the act of the legislature of the state of Washington, entitled 'An act providing for the location, construction and maintenance of the university of Washington, and making an appropriation therefor, and declaring an emergency,' approved March 4, 1893."

Section 9 above referred to is as follows:

"That 100,000 acres of the lands granted by section 17 of the enabling act, approved February 22, 1889, for state, charitable, educational, penal and reformatory institutions

are hereby assigned for the support of the university of Washington." Laws 1893, p. 299.

The constitutionality of § 1 of the act of 1903, and, incidentally, the constitutionality of § 9 of the act of 1893, is questioned by the commissioner, who denies the validity of those acts in so far as they provide for the selection of 100,000 acres of land of the lands granted to the state by .§ 17 of the enabling act. The substance of such contention is that it was the intention of congress to make the grant of 200,000 acres, provided for in § 17 of the enabling act, to those institutions which are not otherwise provided for; or, in other words, that the special provisions made for certain institutions negatived, by implication, the idea that the institutions so provided for should share in this general appropriation, and that therefore, inasmuch as § 14 of the enabling act grants seventy-two sections, or 42,080 acres, of land to the state for the purpose of a university, it follows that the university is excluded, by contemplation of law, from the benefits of the grant made in § 17.

But, in addition to the fact that the evident object and practical effect of the provision of § 14 was to confirm a prior grant made in 1854, it seems plain to us that no educational institution is excluded from the benefits of the grant in § 17. The grant is 200,000 acres for state, charitable, educational, penal, and reformatory institutions—essentially different from the grant to North and South Dakota, where, after the grants to special institutions are enumerated, the language is, "and for such other educational and charitable purposes as the legislature of said state may determine, 170,000 acres." There the institutions previously provided for are especially excluded from participating in the further grant of 170,000 acres by the use of the word "other," while no words of exclu-

sion are used in the grant to the institutions of Washington.

It seems to us that the language used in § 17 is not susceptible of construction, and the fact that the legislature may have the power to appropriate to one institution more than its proportionate part of the grant, cannot affect the construction. This is a question of public policy, which must be determined exclusively by the legislature. And it cannot be discovered that what might, on first thought, be considered an unjust apportionment of the grant has any practical effect in any event. All these institutions are maintained by the state, and the grant is simply an asset in the hands of the state to aid it in maintaining them. The passage of the act being within the authority of the legislature, the writ will issue as prayed for.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.