**CARLSBAD UNION SCHOOL DISTRICT OF SAN DIEGO COUNTY et al., Plaintiffs,**

v.

**Max RAFFERTY, Superintendent of Public Instruction, et al., Defendants.**

Civ. No. 69-29.

United States District Court
S. D. California.

May 12, 1969.

Bertram McLees, Jr., County Counsel, San Diego County, by Joseph Kase, Jr., Deputy County Counsel, San Diego, Cal., for school district plaintiffs.

Thomas C. Lynch, Atty. Gen., for California, by Richard L. Mayers, Deputy Atty. Gen., Sacramento, Cal., for defendants.

I. OPINION OF SINGLE-JUDGE COURT

KUNZEL, Chief Judge.

This is probably the fifth challenge [1] in the United States District Courts to

---

1. Shepheard v. Godwin, 280 F.Supp. 869 (E.D.Va.1968)
   Douglas Independent School District No. 3 v. Jorgenson, 293 F.Supp. 849 (C.D. S.D.1968)

   Hergenreter v. Hayden, 295 F.Supp. 251 (D.Kan. Sept. 30, 1968)
   Triplett v. Tiemann, No. 03085 (D.Neb. July 2, 1968)

state laws which provide for the deduction of certain percentages of federal impact funds [2] from the amount of state aid which would otherwise have been allocated by the state to impacted school districts. All other challenges have been sustained, just as this must be.

Here plaintiffs fall into two classes: (1) the impacted school districts which qualify for federal aid pursuant to Pub. L. No. 81–874, 64 Stat. 1100; and (2) resident taxpayers in the affected districts. Each class has complained on behalf of themselves and all others similarly situated "who are deprived of the benefit of Pub.L. No. 874 of the 81st Congress by virtue of the action of the state of California in reducing state aid by substantial amounts of federal aid received by said school districts." [3]

Very briefly, California has a comprehensive scheme of school aid called the Foundation Program. The principles and policies of such a program can be found in Cal.Ed.Code, § 17300. This program consists of "Basic Aid", "District Aid", and "Equalization Aid". Basic Aid is required by the state constitution. It is computed according to the average daily attendance (ADA) of students within the various districts. District Aid is based upon the assessed valuation of property within the districts. Equalization Aid is an additional form of aid payable to the districts if the amount of Basic Aid and District Aid for any district is less than the amount of the Foundation Program computed for that district. It is the Equalization Aid that concerns us here.

Cal.Ed.Code, §§ 17602, 17602.5, 17603, 17603.5, and 17605 [4] provide for a re-

2. Pub.L.No. 81–874, 20 U.S.C. § 236 et seq.

3. Plaintiffs' complaint, paragraph V.

4. [From plaintiffs' memo in support of restraining order, filed February 5, 1969] *Analysis of Statutes:*
"Commencing with the fiscal year 1967–68 (beginning July 1, 1967) for any school district in California which the defendant Superintendent of Public Instruction determines will receive less than 35% of its income to the district's general fund from Public Law 874 (Section 3) funds, the amount of equalization aid allowable to any such school district is reduced by 25% of the Public Law 874 (Section 3) funds, the amount of equalization aid allowable to any such school district is reduced by 25% of the Public Law 874 (Section 3) funds receivable by the district (California Education Code §§ 17603.5 and 17605.) Commencing July 1, 1967, for any school district in California which the defendant Superintendent of Public Instruction determines will receive 35% or more of its income to the district's general fund from Public Law 874 (Section 3) funds and prior to July 1, 1967, for all school districts in California, the amount of equalization aid allowable to any such school district is reduced by a formula which increases the district's assessed valuation for purposes of determining equalization aid by an amount equal to the assessed

valuation necessary at the district's current tax rate, to raise 40% of the Public Law 874 (Section 3) funds receivable by the district. In applying that formula the district's equalization aid is reduced by a substantial amount. (California Education Code §§ 17602, 17602.5, 17603, 17603.1 [17603.5] and 17605.)"
*"Foundation Program.* Currently, the California Legislature has in effect a foundation program for the school districts in the state. (Article 2 [commencing at § 17651] and Article 2.1 [commencing at § 17671] and Article 2.5 [commencing at § 17680], Chapter 3, Division 14 of California Education Code.) This program is substantially similar to the plans in effect for past years. The principles and policies of State aid to local school districts is expressed by the California Legislature in California Education Code § 17300 as, in part: "to strengthen and encourage local responsibility for control of public education"; to "facilitate the provision of full educational opportunities for all who attend the public schools"; to require that local school districts "contribute to the support of school budgets in proportion to their respective abilities, and that all have such flexibility in their taxing programs as will readily permit progress in the improvement of the educational program"; to "assure that state, local and other funds are adequate for the support of a realistic foundation program"; to "permit and encourage local school districts to provide

duction of state Equalization Aid going to school districts receiving federal funds under Pub.L. No. 81–874. While the federal funds do not equal what would have

and support improved district organization and educational programs"; to provide "for the apportionment of state funds to local school districts on a strictly objective basis * * * [without vesting discretionary powers in state officers]"; and * * * "to provide a financial plan between the State and local agencies known as the foundation prgram for public school support. Toward this foundation program, each county and district, through a uniform method should contribute in accordance with its true financial ability.

"The system of public school support should provide, through the foundation program, for essential educational opportunities for all who attend the public schools. Provision should be made in the foundation program for adequate financing of all educational services.

"The broader based taxing power of the State should be utilized to raise the level of financial support in the properly organized but financially weak districts of the State, thus contributing greatly to the equalization of educational opportunity for the students residing therein. It should also be used to provide a minimum amount of guaranteed support to all districts, for such state assistance serves to develop among all district a sense of responsibility to the entire system of public education in the State. State assistance to all districts also would create a tax leeway for the exercise of local initiative." (California Education Code § 17300.)

The foundation program, as stated by the legislature in Section 17300 represents a program which is necessary to provide each child in the State the essential educational opportunities.

A state school fund exists to which the California Legislature has perpetually appropriated general fund money for school purposes. (California Education Code § 17301.)

The State of California has determined the amount necessary for a school district to attain the foundation program. The minimum foundation program cost for each unified school district, each elementary school district, each high school district, and each junior college district is computed according to the formula set forth in Article 2 (commencing at § 17651) of Chapter 3, Division 14 of the Education Code. The computation is made by the Superintendent of Public Instruction; the factors in computing the program vary in each district, and include

such factors as the type of district, the units of average daily attendance, size and number of particular schools, the number of teachers, distance of pupils residences from schools, assessed valuation and tax levies. For efficiently organized districts, an increased foundation program formula is provided. (Article 2.1 [commencing at § 17671], Chapter 3, Division 14 of the Education Code.) For certain districts which have not unified pursuant to a master plan adopted under provisions of the Education Code, a special areawide foundation program is computed in a manner which equalizes between the districts involved the assessable property in the area. (Article 2.5 [commencing at § 17680] and Article 3 [commencing at § 17701], Chapter 3, Division 14 of the Education Code.) Under these provisions, the amount of foundation program generally is computed to be a dollar amount per unit of average daily attendance. The dollar amount varies according to circumstances existing in the district.

*Basic Aid.* The State of California provides for basic aid to all school districts in the state. Each elementary, high school or junior college district is entitled to $125.00 per unit of average daily attendance for each fiscal year, with a minimum of $2,400 each fiscal year to each such district. (Article 4 [commencing at § 17751 (for elementary districts)], Article 5 [commencing § 17801 (for high school districts)], and Article 6 [commencing at § 17851 (for junior college districts)], Chapter 3, Division 14, of the Education Code.) The California Constitution requires that the Legislature apportion each fiscal year to each school district at least $120 per average daily attendance with a minimum of $2,400.00 per district. (California Constitution, Article IX, Section 6.)

*District Aid.* The State of California requires that each district (or area comprising certain districts that should be unified under an approved master plan) shall contribute a predetermined amount toward the foundation program before the district is eligible for equalization aid. (Article 3 [commencing at § 17701], Chapter 3, Division 14, Education Code.) On a district level this amount is established as that amount which a tax levied on each $100 of assessed valuation in the district would produce if levied, if such tax was $1.00 for an elementary school district, $.80 for a high school district and $.25 for a junior college dis-

been otherwise available as tax revenue, they do amount to substantial aid—approximately $75,000,000.00 statewide for the 1968–69 fiscal year. Plaintiffs allege

trict. (Ed.Code § 17702). In certain districts which have failed to unify under an approved master plan, the same amounts are levied and reapportioned among the districts involved on an area wide level. (Ed.Code § 17702.2.) Adjustments are authorized to meet some exceptional situations. (Ed.Code §§ 17702.3–17710.)

*Equalization Aid.* The State of California also has determined that it will provide what is called equalization aid to school districts to enable them to attain the financial standard required by the foundation program. (Article 7 [commencing at § 17901], Chapter 3, Division 14 of the Education Code.) For elementary districts in which the assessed valuation is less than $10,000 per unit of average daily attendance or in high school districts in which the assessed valuation is less than $20,000 per unit of average daily attendance, the state provides supplemental support as a part of equalization aid. (Article 7.1 [commencing at § 17920], Chapter 3, Division 14, Education Code). The amount of equalization aid and supplemental support to which any district is entitled is computed according to these articles.

If the amount of basic aid and district aid for any district is less than the amount of the foundation program computed for that district, an additional amount, known as equalization aid, is payable to the district. (Education Code §§ 17901 [elementary districts], 17902 [high school districts] and 17904 [junior college districts]). Equalization aid is determined by formulas which include many factors, such as units of average daily attendance, district tax rate and assessed valuations.

*Deduction of State Aid by Substantial Amounts of Federal Aid.* The amounts of the equalization aid provided by the state formula must be reduced, as follows:

(1) *if the district receives less than 35% of its general fund money from Public Law 874 (section 3)*—by 25% of the amount of such Federal funds receivable. (Ed.Code §§ 17603.5 and 17605.)

(2) *if the district receives 35% or more of its general fund money from the Public Law 874 (section 3)*—by a substantial amount, computed by adding to the district's assessed valuation of the district wherever it is used in the state apportionment formula an amount which would produce 40% of the Federal funds if the district's current tax rate were levied on such added amount. (Ed.Code §§ 17602, 17602.5, 17603, 17603.5 and 17605.)

*Miscellaneous Allowances.* Special allowances of state aid are authorized for a special purpose (Article 8 [commencing at § 17951], Article 8.5 [commencing at § 17970], Article 10 [commencing at § 18051], Article 11 [commencing at § 18101], Article 14 [commencing at § 18251] and Article 15 [commencing at § 18301] of Chapter 3, Division 14 of the Education Code.) These allowances, (for purposes of this case), are not a part of the equalization aid except some such allowances where the aid is based on assessed valuation must be reduced by amounts of federal impact aid (see for example Article 10 [commencing at § 18051] and § 17602.5.)

Under the above acts a contribution is made by the State of California from the State School Fund to the cost of education in each school district as spelled out in the Education Code. It is comprised of (1) basic state aid, and (2) if the district is eligible, to equalization aid. The basic state aid is that amount authorized by the Legislature and required by the Constitution. The state equalization aid is determined by subtracting from the foundation program the following items:

(1) the basic state aid (Ed.Code §§ 17901, 17902, and 17904.)

(2) the district aid in an amount equivalent to a uniform tax levy of $1.00 (in elementary districts), $.80 (in high school districts) and $.25 (in junior college districts) on each $100 of 100% of the assessed valuation in each district, subject to some adjustments where areawide aid is required to further equalization in certain districts which failed to unify (Ed.Code §§ 17901, 17902, and 17904); and

(3) an amount equal to 25% (in 1967–68 and in 1968–69) of the impact funds receivable by the school district from the Federal government for operating costs. (Ed.Code § 17603.5; See also §§ 17602, 17602.5 and 17603 where district receives more than 35% federal aid to its general fund.) (This deduction may not be reduced below the amount of aid allowed under subd. (1).)

Administration of this allocation of state money is put in the hands of the Superintendent of Public Instruction and the State Controller.

*First Principal Apportionment.* Defendant Superintendent of Public Instruction is required, on or before February 20, 1969, to apportion to the school districts in California the total amounts

that the above state statutes allow the state to reduce Equalization Aid by approximately 25% to those districts receiving Pub.L. No. 81–874 funds. They seek a permanent injunction against defendants Rafferty, Superintendent of Public Instruction, Flournoy, State Controller, *et al.*, enjoining implementation of the state statutes in question, *viz*, against any reduction in the state's Equalization Aid to the impacted school districts because of availability to any such district of federal funds under Pub. L. No. 81–874.

Plaintiffs' argument in support of their motion for a permanent injunction is two pronged: (1) that the state statutes are repugnant to federal law and, therefore, must fall in the face of the Supremacy Clause, Art. 6, Cl. 2;[5] and (2) that the statutes violate the Equal Protection clause of the Fourteenth Amendment and are, therefore, unconstitutional.

Plaintiffs requested the convening of a three-judge court pursuant to 28 U.S.C. § 2281, and a temporary restraining order pending a full hearing. After an adverse hearing the parties submitted the matter. At that time the court had before it only the complaint with its prima facie allegations of a substantial constitutional claim affecting the taxpayer

plaintiffs, and the knowledge that other district courts considering similar claims were three-judge courts.[6] No responsive pleading had been filed by defendants. On February 11, 1969, the court granted the motion for a temporary restraining order and, pursuant to 28 U.S.C. § 2284, notified the Chief Judge of this circuit that a three-judge court seemed necessary. Circuit Judge Carter, Chief Judge Pence, of Hawaii, and Chief Judge Kunzel were named therefor.

Thereafter followed successive motions by defendants, (1) to drop the individually named plaintiffs on the ground that they have no standing to sue and their presence was but sham and illusory; (2) to dissolve the three-judge court because the complaint raised no substantial constitutional question other than that embraced by the Supremacy Clause; and (3) to dismiss the complaint on the ground that plaintiffs had failed to state a claim upon which relief could be granted. These were followed by plaintiffs' motions (1) to determine that class actions can be brought both as to the individually named plaintiffs and the school districts; and (2) for a default judgment based on defendants' failure to file a formal answer to the complaint.

The hearing on April 4, 1969, at which time all of these motions were before the

---

due them under the basic aid, equalization aid, supplemental support and other state aid according to the formulas established by the legislature. (Ed.Code § 17402.) This apportionment is called the first principal apportionment. (*Id.*) This is the first computation required by the statute for state aid due to school districts for the current year, although advance estimates are made on or before July 15, 1968 based upon the first and second principal apportionments of the prior year. (Ed.Code § 17401.)

In making the first principal apportionment, the defendant Superintendent of Public Instruction is required to reduce the amount of equalization due each school district in California by substantial amounts of Federal aid computed according to Education Code Sections 17602, 17602.5, 17603, 17603.5 and 17605. *Payments by Controller.* The defendant Controller is required, after the first principal apportionment is made by the

defendant State Superintendent of Public Instruction, to draw warrants on the State Treasury in favor of each county treasury for distributions to the districts in an amount equal to $\frac{2}{6}$ of the difference between the amount certified as the first principal apportionment and the amounts already paid to the districts for the advance apportionments. (Ed.Code § 17352 subd. (a) (3).)

5. United States Constitution, Article VI "Clause 2. This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

6. See Note 1, *supra.*

court, found this judge sitting in a dual capacity, both as a member of the three-judge court as well as a single-judge court. At that time both parties agreed that defendants' motion to dismiss be treated as a motion for summary judgment in view of the matters outside the pleadings. Counsel for defendants also at that time stipulated that there was no dispute as to the facts. Counsel also stated he did not intend to file an answer and would stand on the motion to dismiss.

As appears in the opinion of the three-judge court, *infra,* plaintiffs have not established an Equal Protection claim. In reaching such a conclusion the three-judge court: (1) denied plaintiffs' motion for a permanent injunction; (2) denied defendants' motion to dissolve the three-judge court; (3) granted defendants' motion to drop the individually named plaintiffs; and (4) granted defendants' motion for summary judgment as to the Equal Protection claim.

The three-judge court having dismissed plaintiffs' Equal Protection claim, this court has jurisdiction to pass upon their Supremacy Clause claim. 28 U.S.C. § 1331(a); Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Since it is conceded by defendants that in regard to the school districts this is a proper class action, this court must now face plaintiffs' motions (1) for a permanent injunction, and (2) to enter default judgment; and defendants' motion for summary judgment as to the Supremacy Clause claim.

I. *Plaintiffs' motion to enter default judgment.*

This motion is denied. At the time it was made defendants had not answered the complaint. The motion was merely a protective device, made at a time when plaintiffs were unaware of defendants' strategy. However, there was never any doubt that defendants were actively defending the lawsuit. Plaintiff concedes that no one was prejudiced by defendants' slight delay in noticing its motion.

II. *Plaintiffs' motion for a permanent injunction.*

*Defendants' motion for summary judgment as to the Supremacy Clause claim.*

These two motions raise the same issue, i. e., whether plaintiffs have established a Supremacy Clause claim. At the hearing defendants orally entered an answer (incorporated in earlier motions and memorandums) [7] tantamount to a "confession and avoidance." Defendants admit that Pub.L. No. 81–874 as amended by Pub.L. No. 90–576, 82 Stat. 1064 [8] prohibits the State from taking into account during the 1969–70 fiscal year (beginning after July 1969) or thereafter, funds received by local school districts pursuant to Pub.L. No. 81–874 for the purpose of computing or apportion-

---

7. See defendants' "Memorandum in Support of Motion to Dismiss Complaint," filed March 25, 1969.

8. Pub.L. No. 90–576, §§ 305(a) (2), 305(b) "(a) Subsection (d) of section 5 of the Act of September 30, 1950 (Public Law 874, Eighty-first Congress), is amended (1) by inserting '(1)' after '(d)', and (2) by adding the following new paragraph:
" '(2) No payments may be made during any fiscal year to any local education agency in any State which has taken into consideration payments under this title in determining the eligibility of any local educational agency in that State for State aid (as defined by regulation), or the amount of that aid, with respect to

free public education during that year or the preceding fiscal year, or which makes such aid available to local educational agencies in such a manner as to result in less State aid to any local educational agency which is eligible for payments under this title than such local educational agency would receive if it were not so eligible.'

"(b) The amendments made by subsection (a) shall become effective with respect to each State on the first day of the first fiscal year which begins after the adjournment of the first complete legislative session (at which State aid may be considered) of such State's legislature held after the date of enactment of this Act."

ing state aid to public schools. They also acknowledge the validity of the holdings in the three district court cases preceding this one.[9]

However, defendants contend that Congress in enacting Pub.L. No. 90–576 tacitly condoned the reductions in state aid until the effective date of the amendment, thus giving the state time to deal with the fiscal impact created by such a change in the law. This is essentially an argument of avoidance which, for reasons discussed shortly, this court rejects.

All parties agree that the "fiscal impact" on California for the period involved in this suit, i. e., the current undisbursed sum now withheld under this court's restraining order for the 1968–69 fiscal year, is about $16,000,000.00—in funds neither budgeted nor appropriated.

█ It is likewise conceded that the California Legislature is now in session and has before it for consideration—and presumed passage—legislation aimed at avoiding the prohibitions of Pub.L. No. 90–576. The instant litigation, however, is not concerned with what the California Legislature may or may not do between now and the deadline date of July 1, 1969. Whatever the California Legislature may do cannot alter the fact that the statutes here questioned have violated the Supremacy Clause of the constitution.

Defendants can find nothing in the legislative history of Pub.L. No. 90–576 to support their novel theory that a stay or legal vacuum was intended by Congress because it fixed the deadline for prohibition of all federal aid to impacted areas at a determinable future date. This court believes that Congress still meant in 1968 what it said in the 1966 House of Representatives Committee Report #1814, dated August 5, 1966, which, in proposing an amendment to Pub.L. No. 81–874 stated:

> "Fifteen States offset the amount of Public Law 874 funds received by their school districts by reducing part of their State aid to those districts. This

is in direct contravention to congressional intent. Impact aid funds are intended to compensate districts for loss of tax revenues due to Federal connection, not to substitute for State funds the districts would otherwise receive." U.S.Code Cong. & Admin. News 1966, p. 3878.

While Pub.L. No. 90–576 does set the outer limit by which time reductions in state aid must stop, it does not say, or imply, that Congress intended to foreclose the states from initiating earlier reforms or the courts from enjoining further reductions.

Defendants' additional argument that distribution of approximately $16,000,-000.00 will cause fiscal chaos is unsupported in both fact and law. No showing has been made that plaintiffs cannot or will not use the funds in a worthwhile and efficient manner. Nor can defendants rely on any fiscal problems of their own doing. The statement that the funds represent a windfall is based on the faulty premise that plaintiffs were never entitled to such.

As to the Supremacy Clause claim, this court concurs with and adopts the legal reasoning and holdings of the three district courts that have stricken down similar state legislation.[10]

Accordingly, plaintiffs' motion for a permanent injunction is granted; defendants' motion for summary judgment denied.

Before CARTER, Circuit Judge, and KUNZEL, and PENCE, District Judges.

## II. OPINION OF THREE-JUDGE COURT

KUNZEL, Chief Judge.

At the outset this court is faced with five motions: (1) plaintiffs' motion for a permanent injunction; (2) plaintiffs' motion to determine that a class action may be brought on behalf of the individually named plaintiffs; (3) defendants' motion to drop the individually named

---

9. See note 1, *supra.*

10. See Note 1, *supra.*

plaintiffs; (4) defendants' motion to dissolve the three-judge court; and (5) defendants' motion for summary judgment as to the Equal Protection claim. Defendants' motions are aimed at securing a Circuit Court rather than a Supreme Court route for appeal. Plaintiffs' motions are aimed at direct Supreme Court review, a procedure that could foreclose a meaningful appeal. Each motion raises the basic jurisdictional problem that every three-judge court must face and resolve.

I. *Defendants' motion to dissolve the three-judge court.*

■ This motion is denied. Once a three-judge court has been convened it would be illogical, as well as a waste of judicial time and effort, to dissolve the same without passing on the merits. It has often been pointed out that although a single-judge district court is without power to act in a case requiring three judges, the converse is not true. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). Were defendants' motion granted, an appellate court could conceivably find that a substantial constitutional claim had been raised and thus another three-judge court would have to be convened. The procedure followed in Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942), and Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), is a sound one—once a three-judge court has been convened.

II. *Plaintiffs' motion for a permanent injunction.*

*Plaintiffs' motion to determine that a class action may be brought on behalf of the individually named plaintiffs.*

*Defendants' motion to drop the individually named plaintiffs.*

*Defendants' motion for summary judgment as to the Equal Protection claim.*

These four motions raise the same issue, i. e., whether plaintiffs have established a substantial Equal Protection claim. The only way plaintiffs can successfully oppose defendants' motion is to show that the California statutes in question deny the individually named plaintiffs Equal Protection, as guaranteed by the Fourteenth Amendment.

Had plaintiffs asserted only the Supremacy Clause claim, it is clear that a three-judge court should not, and would not, have been convened. Swift & Co. v. Wickham, *supra*. However, out of an abundance of caution, the district judge here certified to the Chief Judge of the Circuit that a three-judge court was appropriate in the face of a potentially substantial constitutional claim. In order to expedite a proper appeal, as previously noted, the district court sat in both its single-judge and three-judge capacity. This is a procedure sanctioned by the Supreme Court. Swift & Co. v. Wickham, *supra;* Query v. United States, *supra;* and urged in Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968). Both the three-judge and single-judge court Opinions were written by Judge Kunzel.

It is conceded by defendants that in regard to the school districts, this is a proper class action cognizable under Fed. R.Civ.P. 23. What defendants have objected to from the start is the standing of the individually named plaintiffs.

■ The Supreme Court has consistently held that state and municipal taxpayers have standing to sue to enjoin state officials from enforcing allegedly unconstitutional state statutes. Crampton v. Zabriskie, 101 U.S. 601, 609, 25 L.Ed. 1070 (1880); Massachusetts v. Mellon, 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Flast v. Cohen, 392 U.S. 83, 93, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). However, while it is one thing to question standing to sue in the first place, a threshold inquiry, it is quite another to question standing because no actual, monetary injury appears. The answer to the former question is clear, plaintiffs can sue. The answer to the latter question is determinative here for the individually named plaintiffs have not proven any damages as a result of the reductions in state aid.

■■ The general concept of Equal Protection requires the uniform treat-

ment of persons standing in the same relation to the statute challenged. Equal Protection does not require exact equality, but only that there be a reasonable classification. Of necessity, Equal Protection claims must be based on facts. Plaintiffs claim that: (1) the amount of aid the state reduces must be made up from local revenue; (2) as local taxpayers they have to bear a greater burden; and (3) their children receive an inferior education because of the reductions. In support of their claim plaintiffs have filed dozens of affidavits, each stating that the districts in question are desperately in need of money for teachers, books, buildings, materials, etc.

Plaintiffs' first argument is self-refuting. As appears in the affidavits, in almost all of the school districts real property taxes are at the legal maximum. There is absolutely no showing here that plaintiffs bear any greater tax burden than other state residents similarly situated. Nowhere is there any showing that either state or local taxes are increased because of the reductions in question. There is now, and has been, a finite amount of available tax dollars. Plaintiffs are complaining about the distribution of this fixed amount.

While plaintiffs might appear to be on more solid ground when they contend that the quality of education suffers as a result of the reductions, they have not shown that their children receive an inferior education *vis-a-vis* other children attending school in districts receiving full state aid but not federal aid.

■ Plaintiffs' argument that they are in dire need of additional money is one echoed by every educational institution in the nation, both public and private. As appears from defendants' memorandums, public education is an extremely costly endeavor and much manipulation occurs in the area of financing. In good faith, the State of California has attempted to devise a system whereby both state and federal aid are used to provide a more uniform educational opportunity for every child in the state. There is no doubt that the state has honestly attempted to achieve educational parity. While such an attempt may conflict with federal law and thus the Supremacy Clause, it does not violate plaintiffs' right to Equal Protection. The legislation here questioned is not of an irrational or arbitrary nature.

Accordingly, plaintiffs' motion for a permanent injunction is denied. Defendants' motions (1) to drop the individually named plaintiffs, and (2) for summary judgment as to the Equal Protection claim are granted. Rejection of the Equal Protection claim thus ousts this three-judge court of jurisdiction. However, for the reasons earlier stated, this court concurs in and adopts the opinion of the single-judge court as to the Supremacy Clause claim.