William HERGENRETER and James W. Perkins, on their own behalf and for all other citizens similarly situated; and Unified School District No. 437, Shawnee County, Kansas, Plaintiffs,

v.

Murle M. HAYDEN, State Superintendent of Public Instruction of the State of Kansas; James R. Cobler, Controller of the State Department of Administration for the State of Kansas; and Walter H. Perry, State Treasurer of the State of Kansas, Defendants.

No. T–4409.

United States District Court
D. Kansas.

Sept. 30, 1968.

William Hergenreter of Shaw, Hergenreter & Quarnstrom, Wayne Probasco, Topeka, Kan., and Robert K. Weaty, Junction City, Kan., for plaintiffs.

Robert C. Londerholm, Atty. Gen., of Kansas, and Richard E. Oxandale, Asst. Atty. Gen., Topeka, Kan., for defendants.

Before HICKEY, Circuit Judge, and TEMPLAR and THEIS, Judges.

## OPINION OF THE COURT

THEIS, District Judge.

This suit was instituted by plaintiffs as a class action to challenge the legality of action by the State of Kansas acting through its state school officials in establishing a formula and allocating funds for state aid to be given school districts in the State of Kansas under the so-called Kansas School Foundation Act (K.S.A. § 72–7001 et seq.), the provisions of which statute require that twenty-five percent of the total amount of federal impact funds received by an eligible district be deducted from the amount of state aid to such impacted district.

■ Federal "impacted area" legislation was enacted by Congress in 1950 as Public Law 874, codified as Title 20 U.S.C. § 236 et seq., for the purpose of bringing about a contribution of the United States of America toward the cost of educating children in public schools located within federally impacted areas which, by reason of such federal impact, were being deprived of normal tax sources available for the financing of public school systems and to assist the localities in providing adequate educational facilities as a result of the increased pupil load brought to the involved areas by such federal activity.

The plaintiffs here are residents and taxpayers of Kansas School District No. 437, located adjacent to Forbes Air Force Base at Topeka, Kansas, in Shawnee County, a well-known federal military installation, and which is an impact area. The plaintiffs here seek to enjoin the defendants from current and future distribution of state foundation funds, and assert that this twenty-five percent deduction from the state aid fund to federally impacted areas is prohibited by the federal legislation, and that under the Supremacy Clause, Article VI, Clause 2 of the United States Constitution, such deduction is unlawful and the state law authorizing it is unconstitutional.

By previous action of this Court, Robert Docking, Governor of Kansas, has been dismissed as a party defendant, and the entitlement of the action has changed from Hergenreter v. Docking, et al, to Hergenreter v. Hayden, et al. Likewise, certain party plaintiffs have been added, as well as allegations, by amendments. Previously herein, defendants' motion to dismiss was overruled. This action is presently before the Court for decision upon cross-motions of the parties for summary judgment based on the file, stipulations, admissions, pretrial order, and evidence introduced. It is conceded also by the parties that a three-judge court is proper and has jurisdiction of the parties and subject matter of this action.

The issue before the Court for decision, as stipulated by counsel and now determined by this Court, is stated as follows:

"Does the State School Foundation Act as found in K.S.A.1967 Supp. 72–

7001, et seq., specifically sections 72–7005 [1] and 72–7010, [2] conflict, in such a way as to make the state act unconstitutional under the Supremacy Clause of the United States Constitution, with United States P.L. 874, as found in 20 U.S.C.A. 236, et seq., specifically section 238(c) (1) because of the fact that the state Foundation Act takes into account the federal funds received by a school district under section 238(c) (1) of 20 U.S.C.A. in determining the amount of state aid such district is to receive?"

In 1965 the Kansas Legislature enacted a "School Foundation Act," as cited, supra. The aim of this Act is to provide uniform educational opportunities to all children within the State of Kansas by supplementing local sources of revenue with state aid. By a formula set out in the Act a "State-shared guarantee" is determined. (See K.S.A. 72–7008.) To make allowance for local financial ability, there is subtracted from the "State-shared guarantee" a sum based upon the "economic index" of the county in which the school district is located. Two factors are taken into account in determining the "economic index" of the county, namely, property valuation and the income of the residents. The two factors are added together and divided by two. (See K.S.A. 72–7010.)

In addition to subtracting the figure produced by the application of the "economic index," the Act provides that

1. "K.S.A. 72–7005. Nondistrict revenue defined; sources. 'Nondistrict revenue' shall include revenues received or to be received by a district from the following sources: (a) Federal funds: The estimated entitlement to be received during the current school year under the provisions of subsections (a) and (b) of 20 U.S.C.A. 238 in excess of the amount to be received during the current school year under the provisions of public law 388 (69 Stat. 722, 40 U.S.C.A. 521) to the extent of twenty-five percent (25%) thereof, and adjustment to be made of the difference between the amount estimated and the amount actually received during the year by adding or subtracting such difference from this item the following year. Nondistrict revenue shall not include revenues received or to be received by a district under the provisions of 20 U.S.C.A. 237 or subparagraph (4) of subsection (c) or subsection (f) of 20 U.S.C.A. 238 or subsection (a) of 20 U.S.C.A. 239 or 20 U.S.C.A. 241. (b) State funds: Received on February 15 of the current calendar year from the state annual school fund. (c) County funds: The amount each district is entitled to receive during the ensuing calendar year from the special high-school equalization fund and the county school fund. (d) The amount of intangible tax to the credit of the district on the tax rolls of the current year."

2. "K.S.A. 72–7010. Computation of state aid. The state board shall compute the amount of state aid each district is entitled to receive from the state [school founda-tion] general fund as follows: (a) Determine the economic index of each county in the state in the following manner: (1) Compute the percent of each county of the state total of (A) the average adjusted valuation for the preceding two (2) years, and (B) the average of net income as defined in the Kansas income tax act after deducting the exemptions provided in that act, of resident individuals for all taxable years ending during the two most recent calendar years for which such figures are available. The director of revenue shall certify to the state board, on or before October 1 of each year, the information necessary to enable him to make such computation. (2) Total out percentages in (A) and (B) above and divide by two, carrying the computation to three decimal places. The quotient so obtained is the economic index of the county. (b) Apply the economic index of the county to the total amount of taxes which would be produced in the state by a ten (10) mill levy in each county on the adjusted valuation of the preceding year of the county. (c) Divide the figure obtained in (b) above by the number of certificated employees in all the districts in the county on September 15 and multiply the quotient by the number of certificated employees of the district on that date. (d) Add the figure obtained in (c) above to the nondistrict revenue of the district and subtract the sum from the amount of the state-shared guarantee of the district. The remainder is the amount of state aid the district is entitled to receive from the state [school foundation] general fund."

"non-district revenues" must also be subtracted from the "State-shared guarantee." (See K.S.A. 72–7010(d).) "Non-district revenue," according to K.S.A. 72–7005, includes twenty-five percent of the funds received by a district under subsection (a) and (b) of Section 238, 20 U.S.C.A.

The undisputed evidence before this Court shows:

1. There are 123 federal impact area school districts in Kansas.

2. The total amount of federal impact area funds received, or estimated at this time to be received, by such local school districts in Kansas was $8,160,003 in 1966–67, and $8,298,645 in 1967–68.

3. For the 1967–68 year, P.L. 874 deduction from state aid per pupil under the Kansas School Foundation Act varied from a high of $71.39 at Ft. Leavenworth, to a low of $.32 at Piper, School District No. 203 (Defendants' Exhibit C.).

4. During school year 1967–68, Unified School District No. 437 had in average daily attendance for 180 days, 1,-617.51 children whose parents resided on the Capehart Housing Project; and 360.69 children in average daily attendance for 180 days whose parents were employed on federal property or were in the military service of the United States but who did not reside on the Capehart Housing Project.

5. For the school year 1967–68, Unified School District No. 437 has received or will receive from the United States Government under Subsection (a) and (b) of Section 238, of Public Law 874, Title 20, U.S.C.A. by reason of the attendance of all the children referred to in stipulation number 4 above during the school year 1967–68, a total of $539,966.-31; that said District has received or will receive an additional sum of $158,-153 for the attendance of said children, Title 20 U.S.C.A. § 238(c) (4) and § 239 (a).

6. During the school year 1967–68, Unified School District No. 437 has received or will receive from the United States Government for each child whose parents resided on the Capehart Housing Project and who had an average daily attendance of 180 days, $300.33 under subsection (a) of Section 238 of Title 20 U.S.C.A.; and during the school year 1967–68, Unified School District No. 437 has received or will receive from the United States Government for each child whose parents worked on federal property but did not reside there, and who had an average daily attendance of 180 days, $150.16 under subsection (b) of Section 238, Title 20 U.S.C.A. (In all cases referred to in this stipulation, kindergarten children were counted as one-half pupils.)

7. During the school year of 1967–68, Unified School District No. 437, received from the State of Kansas under K.S.A. 72–7001 et seq., $436,977.00.

8. During the school year of 1967–68, the State of Kansas, under K.S.A. 72–7005 and K.S.A. 72–7010, withheld from Unified School District No. 437's "State-shared guarantee" as provided for by K.S.A. 72–7008, $118,398.00, and for the school year 1966–67, the State of Kansas withheld from the District's "State-shared guarantee," under the same provision, $146,429.00.

Defendants assert that under the Kansas school fund law, the state aid formula is an equalization formula which attempts to equalize throughout the state the tax burden of taxpayers for the cost of education, as well as to provide adequate and equal educational facilities. They claim, but admit the impossibility of evidentiary proof, that the effect of the equalization formula is to benefit so-called federal impact areas where real estate has been taken off the tax rolls in such a way that "the state is, in effect, reimbursing the school district for federal ownership and activity by giving aid not only on the basis of the number of children attending the school in the school district, but also on the school district's lowered proportion of the state wealth in terms of land and income valu-

ation." (Defendants' Brief, p. 7). Continuing, the Defendants' Brief states:

"The state legislature has decided that by deducting an amount equivalent to only 25% of the federal funds received, it has selected a low enough figure to insure a balancing between the potential wealth of the land removed from the tax rolls, with its resultant increase in students, and the additional state aid which the district receives by virtue of its lower economic index and increased student attendance."

Defendants' final deduction from their argument is that if no credit were made for federal impact money going to a school district, then under the state equalization formula, an impact district would be receiving special impact aid twice—once from the state and once from the federal government. They argue that the purpose of the federal school impact-area legislation was *to reimburse* local school districts for loss of taxable land (Defendants' Brief, p. 8). Plaintiffs vigorously dispute this conception of the operation of the school foundation law.

The defendants' other principal contention is that the legislative intent of Congress in enacting P.L. 874 did not prohibit state legislation such as the Kansas School Foundation Act.

█ Neither of defendants' contentions can be sustained. We think it is clear upon the law and the evidence that the State of Kansas is tampering with the distribution of federal funds contrary to Congressional intent expressed in P.L. 874, and hence is in violation of the Supremacy Clause of the United States Constitution, Article VI, Clause 2.

At the outset we note the applicability of the excellent reasoning and holding in Shepheard v. Godwin, 280 F.Supp. 869, decided by a three-judge court on February 16, 1968, in the United States District Court for the Eastern District of Virginia, where similar—but not identical—Virginia school fund legislation was held unconstitutional on the basis of violation of both the Supremacy Clause and the Fourteenth Amendment.

█ The defendants' assertion that the Kansas Act actually takes no financial aid from federal impact areas in Kansas cannot stand. In the first place, it lacks any evidentiary foundation and rests only on the statements in the brief and oral argument of the defendants' counsel, the Attorney General of Kansas, and his assistants. In the second place, in the view of this Court, such a statement, if proved and true, would not justify the impact of the state legislation nor render it valid. The admitted purpose of the Kansas legislature, no matter how laudable its motive or, theoretically, how valuable its end in aiding education in federal impact areas, was to substitute state judgment for federal judgment, as reflected in the state and federal statutes considered here. No matter how salutary the state legislation, it must give way under the Supremacy Clause. However, here we do not have to speculate under the evidence that a portion of the federal money given to School District No. 437 was indirectly taken away, withheld and distributed elsewhere among the school districts of Kansas. In the light of Stipulation of Fact No. 8, a very substantial sum was redistributed by bookkeeping credits for each of the last two fiscal years. Defendants' Exhibit C confirms the statewide diminution of federal funds in every impact district. As stated in Shepheard v. Godwin, supra, the federal statute was intended by Congress to supplement local funds, not substitute for them.

█ The other principal argument of the defendants' counsel is that under a proper interpretation of the federal statute 20 U.S.C.A. 236 et seq., on impact areas, and a study of congressional intent, the state statute as it relates to federal school funds is permissive, rather than prohibitive. We have made independent research on this point and believe, with the Virginia Federal Court in Shepheard v. Godwin, supra, that the House of Representatives Committee Report No. 1814, dated August 5, 1966, in

proposing an amendment to P.L. 874, makes it abundantly clear that state manipulation of these impact area funds is prohibited.[3]

Without desiring to prolong disposition of the singular issue here, the reasoning behind the Supremacy Doctrine, as a historic rule of constitutional law, is succinctly set forth in Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, 147 A.L.R. 761, to-wit:

"Since the United States is a government of delegated powers, none of which may be exercised throughout the Nation by any one state, it is necessary for uniformity that the laws of the United States be dominant over those of any state. Such dominancy is required also to avoid a breakdown of administration through possible conflicts arising from inconsistent requirements. The supremacy clause of the Constitution states this essential principle. Article VI. A corollary to this principle is that the activities of the Federal Government are free from regulation by any state. No other adjustment of competing enactments or legal principles is possible."

While the contention is made by the plaintiffs that the state statute and state action is also in violation of the equal protection clause of the Fourteenth Amendment, we do not find it necessary to decide, or the evidence sufficient to establish, such a point. The Fourteenth Amendment basis in Shepheard v. Godwin, supra, turned on an entirely different premise than that urged here.

In view of the broad constitutional foundation of this decision, it becomes unnecessary to split hairs over valuations, tax levies, economic enhancement and kindred benefits or detriment to Kansas taxpayers stemming from the operation of either or both the federal impact-areas school legislation and the Kansas legislative enactment of its School Foundation Act.

It should be noted that plaintiffs have abandoned their claims and now concede that this Court cannot constitutionally, under the Eleventh Amendment, decree affirmative relief against the State of Kansas for attorney fees for plaintiffs or for restitution of past school distribution funds which may have been illegally withheld by defendants. Sole judicial relief must here relate to future state actions unconsummated relative to current administration of the Kansas School Foundation Law.

An order of injunction is hereby entered that the defendants, and their successors in office be, and each of them is hereby, restrained and enjoined from hereafter in any manner enforcing or effectuating the Kansas School Foundation Act of 1965, K.S.A. 72–7001 et seq., insofar as this legislation directs or requires a deduction to be made in the computation of state aid to local public schools of Kansas based on, or in consideration of, any part of the monies payable to, or for the benefit of, such local schools by the United States of America, under and by virtue of Public Law 874, 81 Cong.2d Session, approved September 30, 1950, 64 Stat. 1100, 20 U.S.C. § 236 et seq., as amended (Supp. II 1965–1966); excepting from the scope and impact of this order of injunction any payments of funds under the said Kansas School Foundation Act reflecting adjustments for disbursements made prior to this order, which payments are necessary to complete administration of said law and disbursement of funds in or as to prior fiscal or distribution years under Public Law 874 and K.S.A. 72–7001 et seq., it being the intention of the Court that this order be completely prospective.

3. The Committee Report in pertinent part reads as follows:

"Fifteen States offset the amount of Public Law 874 funds received by their school districts by reducing part of their State aid to those districts. *This is in direct contravention to congressional intent.* Impact aid funds are intended to compensate districts for loss of tax revenues due to Federal connection, not to substitute for State funds the districts would otherwise receive."

It is further ordered and adjudged that this action be, and it is hereby continued, and jurisdiction thereof retained, with leave to any party to apply on notice for such further orders as may be deemed necessary or proper.