**DOUGLAS INDEPENDENT SCHOOL DISTRICT NO. 3** who sues on its own behalf and on behalf of all other school districts similarly situated, and Frederick L. Gray and Antonia B. Kopp who sue on behalf of themselves and all other citizens similarly situated, Plaintiffs,

v.

**Lloyd JORGENSON, State Auditor, State of South Dakota, Pierre, South Dakota; Al Hamre, State Treasurer, State of South Dakota, Pierre, South Dakota; Alvin F. Bies, Assistant Director, Statistical Services, Department of Public Instruction, Pierre, South Dakota; Gale D. Schlueter, Director, Statistical Services, Department of Public Instruction, Pierre, South Dakota; James C. Schooler, Assistant Superintendent, Administration, Department of Public Instruction, Pierre, South Dakota; Dr. Gordon A. Diedtrich, Superintendent of Public Instruction, Department of Public Instruction, State of South Dakota; Defendants.**

Civ. 68–19C.

United States District Court
D. South Dakota, C. D.

Nov. 26, 1968.

Melvin D. Wedmore, Rapid City, S. D., for plaintiffs.

Frank L. Farrar, Atty. Gen., and C. J. Kelly, Asst. Atty. Gen., State of South Dakota, for defendants.

Before VAN OOSTERHOUT, Chief Circuit Judge, NICHOL, Chief District Judge, and BECK, District Judge.

## MEMORANDUM DECISION

NICHOL, Chief District Judge.

This constitutes at least the third in a series of challenges to state laws seeking to deduct certain percentages of Federal impact funds from the amount of state aid to impacted school districts. Three-judge Federal district courts in both Virginia and Kansas have sustained such challenges. We do the same in South Dakota.

The Douglas Independent School District No. 3, (hereinafter referred to as Douglas Independent), Frederick L. Gray, and Antonia B. Kopp, on behalf of themselves and all others similarly situated, attack the constitutionality of Chapter 53 (H.B. 877) of the South Dakota Session Laws of 1967 and Chapter 44 (S.B. 104) of the South Dakota Session Laws of 1968, both of which permit the State of South Dakota to deduct certain percentages of the Federal impact funds received by an eligible district from the amount of state aid to such impacted area. The plaintiffs claim that the two South Dakota laws violate the Supremacy Clause, Article VI, Clause 2, of the United States Constitution, and also that because of said two South Dakota laws the plaintiffs are being denied their right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

The plaintiffs herein wish to permanently enjoin all defendant State officials from using the two aforementioned South Dakota laws in the computation of the South Dakota Foundation Program Formula and request that the sums already so withheld for the 1967–68 school year be disbursed to the plaintiff and all other impact area districts as they would have been had it not been for the two South Dakota laws herein contested.

An "impacted area" is an area whose school population has been burdened because of attendance by a large number of Federal employees' children and which may at the same time be losing school tax revenues because of the United States Government's immunity from land taxes. Both of these factors generally result from increased Federal activity within the area. In 1950 Congress attempted to somewhat alleviate hardships caused to these "impacted areas" by enacting Public Law 874, codified as Title 20 U.S.C. Sec. 236 et seq. which, while not entirely replacing revenues lost due to the Federal government's immunity from land taxes, does provide for the allocation of Federal funds to local school districts in varying amounts, depending upon whether or not children of Federal employees or members of the armed forces reside on Federal property or whether such children reside off of Federal property but have parents employed on Federal property.

The plaintiff, Douglas Independent, is an impacted area district and the South Dakota laws in question have resulted in a loss of revenue to the district. The plaintiff, Frederick L. Gray, a United States citizen, is employed by and resides on the Ellsworth Air Force Base, South Dakota. Because of his employment and residence at Ellsworth Air Force Base, Gray's four children attend the public schools within Douglas Independent. The plaintiff, Antonia B. Kopp, also a United States citizen, is a resident and taxpayer of Douglas Independent, and

has three children that attend the public schools in Douglas Independent.

The defendants are the State officials charged with the responsibility and duty of distributing the public moneys appropriated for schools by the South Dakota Legislature. The plaintiffs do not claim that the officials have failed to follow the mandate of the laws in question but rather question the validity of those laws. During the 1966–67 school year, the average daily attendance of federally connected school children in the public schools of Douglas Independent was as follows: 2570 children whose parents lived on and worked on Federal property, and 273 children whose parents lived off but worked on Federal property. Under Public Law 874, codified as Title 20 U.S.C. Sec. 236 et seq., the sum allocated per child for the 1966–67 school year was: $359.47 for children of the live on/work on Federal property parent; and $179.74 for children of the live off/work on Federal property parent. The plaintiffs cite Chapter 78, 1961 Session Laws of South Dakota, now SDCL 1967, Sec. 13–28–13, which provides:

"Children who live on any federal lands, irrespective of the nature or content of the federal ownership, interest, or jurisdiction with respect thereto shall have the same school privileges as any other children who live within the state."

as further illustration of their allegation that the children of Douglas Independent and all other children attending schools on Federal land are entitled to equal treatment in the State of South Dakota.

The plaintiffs do not assert violation of this equal treatment until the passage of Chapter 53 (H.B. 877) of the 1967 South Dakota Session Laws which dictated that the computation of the Foundation Formula Funds under SDC 1960 Supp. 15.2246 must consider fifty percent (50%) of the funds received by a school district under the provisions of Public Law 874, subsection 3(c) (1) as part of the income of the foundation program of the school district. The plaintiffs assert that the 1968 South Dakota legislature further penalized federally impacted school districts and the residents thereof when it passed Senate Bill 104 (Ch. 44, South Dakota Session Laws of 1968), which reads in part as follows: (Sec. 3(6) (b) (2) (e)

"Seventy-five percent (75%) of the funds received by a school district under the provisions of Public Law 874 subsection (3) (c) (1)."

It is conceded by the defendants in their trial brief that the merits of this lawsuit "must either stand or fall on the basis of whether or not the decision of the three-judge Federal District Court of Virginia in Shepheard v. Godwin[1] is applicable in this litigation, and if applicable, whether such opinion was correctly decided within the law."

The court in Shepheard was faced with a similar State legislation, the major difference being that moneys saved by the application of the Virginia statutes were returned to the State's general fund while the funds thus saved in South Dakota are disbursed to all school districts within the State. It is the contention of the present defendants that since the State of South Dakota does not retain such funds as did Virginia, that the Shepheard decision is not applicable in the present case. If the court in Shepheard was correct in its finding that 874 funds are a supplement for local revenues rather than a substitute for lost revenues because of increased Federal activity, as the defendants contended in Shepheard and as the present defendants contend, then the difference between what is done with the money withheld from the impacted area districts because of their receipt of 874 funds is immaterial. This Court feels that the finding of the Shepheard court that 874 funds are a supplement for local revenues and not a substitute is correct, and also that the Shepheard case is directly in point with the present case.

1. 280 F.Supp. 869.

At this point it would seem to be appropriate to compare the Virginia Flat Grant statute, under which legislation similar to Ch. 53 of the 1967 South Dakota Session Laws and Ch. 44 of the 1968 Session Laws was found to be unconstitutional and invalid, with the South Dakota Flat Grant statute.

It is the defendants' contention that there is an appreciable difference between the two laws since in Virginia the State retains funds not distributed to the local impacted districts as a result of the Virginia statute retaining 50% of all Federal aid received by the school from the amount of state aid to be distributed, while in South Dakota these funds thus retained are distributed to all other school districts through a pro rata formula. It is the finding of this Court that what the State of South Dakota does with funds unconstitutionally withheld from impacted area districts is immaterial and the fact that the money is withheld is sufficient to substantiate the plaintiffs' claim that their rights have been violated.

The defendants' contention that if the funds withheld under the 1967 and 1968 statutes were not withheld from the impacted area districts that then the State aid would in fact amount to a double payment of sorts to these districts is sufficiently answered by the recent case of Hergenreter v. Hayden,[2] which concludes that a similar law in Kansas which was founded upon similar reasoning was in effect an attempt by the State to substitute its judgment of what amount of money was appropriate to compensate an impacted area district and was invalidated upon that conclusion.

"The grievance of the plaintiffs is obvious; any deduction whatsoever of the Federal supplement in apportioning State aid, pro tanto burdens them as taxpayers, for they and the other property owners in Norfolk and Fairfax have to make up the unindemnified portion of the impact costs. They contend that any deduction is pro-

hibited by the purpose and plan of the Federal act." p. 873 of 280 F.Supp. (Shepheard)

It should also be pointed out that the moneys given for Federal aid are given to the local districts and are meant to be distributed by the local districts and are not meant in any way to be in lieu of State aid. This is evidenced by the fact that "Federal children are to a large extent paying their own way so far as the State is concerned", (p. 873 of 280 F. Supp.), as evidenced by Congressional Committee Report No. 2287 made on June 20, 1950, in reference to 874:

"The reason for not providing in the bill for any payment paralleling the State share in the cost of educating children who reside on or whose parents are employed on Federal property is that the tax-exempt status of the property in question does not normally operate to reduce to any appreciable extent State revenues or otherwise to render the State less able to make its normal contribution with respect to such children. Through sales, gasoline, income, and other forms of taxation, State governments are realizing or could realize substantially as much revenue from the parents of these children as they realize in the case of anyone else in the State. * * * Besides, the State, because of the size and variety of its sources of taxation and of its tax methods, can realize benefits in indirect revenues from the carrying on of Federal activities within its borders which will offset what appears to be an immediate loss in its ability to tax directly the activities in question."

There can be little doubt that 874 funds are to aid the local school district:

"The effect of the payments provided for in this section is to compensate the local educational agency for loss in its *local* revenues. *There is no compensation for any loss in State revenues.* * * *" (Accent added) (p.

2. U.S.D.C.Kan., 295 F.Supp. 251, decided September 30, 1968.

874 of *Shepheard*, citing p. 13 of Report No. 2287 on 874.)

That no State shall reduce State aid in light of Federal aid is evidenced by the House of Representatives Committee Report No. 1814, dated August 5, 1966, which in proposing an amendment to P.L. 874 stated:

"Fifteen States offset the amount of Public Law 874 funds received by their school districts. *This is in direct contravention to congressional intent.* Impact aid funds are intended to compensate districts for loss of tax revenues due to Federal connection, not to substitute for State funds the districts would otherwise receive." (Accent added)

The defendants further argue that the laws in question, which have now been shown to be in direct contravention of Congressional intent, do not violate the Supremacy Clause because Congress has not pre-empted legislation in the field of education. It cannot be disputed, however, that Congress has undertaken many programs to provide Federal aid to education.[3] While there may be credence to the argument of the defendants that Congress has not pre-empted legislation in the field of education, there can be little doubt that it meant to do so in the impacted area districts in regard to Federal aid and the benefit which an impacted area district should receive as a result of such Federal aid. Such was the finding of the court in Shepheard v. Godwin, which stated in reference to the Virginia law, which had much the same effect as the South Dakota laws in question:

"Our conclusion is that the State formula wrenches from the impacted localities the very benefaction the act was intended to bestow. The State plan must fall as violative of the supremacy clause of the Constitution. Our decision rests entirely on the terms, pattern and policy of the act." (p. 874 *Shepheard.*)

3. A list of some of the programs funded by Federal funds is given in the Plaintiffs' Brief After Trial commencing on p. 7, as follows:
  A. Revenue from Federal sources *distributed by the county*:
    1. Taylor grazing
    2. Bankhead Jones Farm Tenant Act, Land Utilization
    3. National mineral lands
    4. National forest lands
    5. Flood control
    6. County apportionment portion of National forest lands
  B. Revenue from Federal sources *distributed by the state*:
    1. Indian education, Johnson-O'Malley
    2. Vocational education:
      a. Home Economics
      b. Agriculture
      c. Business and office occupations
      d. Trades and industries
      e. Technical education
      f. Health occupations
      g. Distributive education
      h. Manpower development
      i. Other vocational education programs
      j. Area vocational school construction
      k. Work study programs

3. National Defense Education Act:
    a. Title III
    b. Title V-A
    c. Other National Defense Education Act Programs
4. National school lunch and milk programs:
    a. School lunch program
    b. Milk program
5. Adult Education
    a. Adult basic education
6. Elementary and Secondary Education Act:
    a. Title I
    b. Title II
    c. Title III
    d. Title IV
    e. Other ESEA programs
7. National Highway Safety Act
Another point in refutation of the State's overwhelming interest in State Education as opposed to that of the Federal Government is the fact that the State of South Dakota provides only 10.94% of all State Educational moneys while the Federal Government provides nearly an identical amount, 10.16%. This would indicate that the interest of each is essentially equal. Both of the above percentages are contained in the Research Bulletin 45.6 entitled South Dakota School Statistics 1966–67.

The even more recent case of Hergenreter v. Hayden quotes Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, in reference to such State laws being in violation of the Supremacy Clause:

"Since the United States is a government of delegated powers, none of which may be exercised through the Nation by any one state, it is necessary for uniformity that the laws of the United States be dominant over those of any state. Such dominancy is required also to avoid a breakdown of administration through possible conflicts arising from inconsistent requirements. The supremacy clause of the Constitution states this essential principle. Article VI. A corollary to this principle is that the activities of the Federal government are free from regulation by any state. No other adjustment of competing enactments or legal principles is possible."

With the above quotation in mind, there can be little doubt that to permit States to alter the effect of Federal aid through State legislation would be in effect permitting the unconstitutional regulation of Federal legislation.

Enforcement of Chapter 53 of the South Dakota Session Laws of 1967 and Chapter 44 of the Session Laws of 1968 would mean penalizing children and their parents who either live or work on Federal lands within the State of South Dakota and effectively denying them the same school privileges as other children in the State. This is a discrimination without justification, and we must strike it down as unconstitutional.

The defendants and their successors in office are hereby restrained and enjoined from hereafter in any manner enforcing or implementing Chapter 53 of the South Dakota Session Laws of 1967 and Chapter 44 of the Session Laws of 1968 insofar as this legislation directs or requires a deduction to be made in the computation of State aid to local public schools based on, or in consideration of, any part of the moneys payable to, or for the benefit of such local schools by the United States of America under and by virtue of Public Law 874, 81st Congress, 2nd Session, 20 U.S.C. Sec. 236 et seq., as amended.

The foregoing shall constitute findings of fact and conclusions of law. Counsel for the plaintiffs are instructed to prepare an appropriate order and permanent injunction in accordance with this opinion.