[No. 42185.    En Banc.    July 27, 1972.]

H. J. CARROLL *et al.*, *Appellants*, v. LOUIS BRUNO *et al.*, *Respondents.*

*Beresford & Booth, A. Clemens Grady*, and *Wayne C. Booth*, for appellants.

*Slade Gorton, Attorney General,* and *Robert E. Patterson, Assistant,* for respondents.

HALE, J.—The United States owns a number of national forests in this state which are not subject to state or local taxes. As a contribution in lieu of taxes, the federal government pays to the state each year 25 per cent of all moneys received from national forest timber sales and other national forest services. 16 U.S.C. § 500 (1960). These national forest funds are by law earmarked for the benefit of the

public schools and public roads of the counties in which the national forests are situated.

By state statute (RCW 28A.41.130), the Superintendent of Public Instruction includes 85 per cent of these national forest funds allocable to the schools in distributing so-called state "equalization funds" to school districts in which all the projected revenues available to the districts fall below a state per-student minimum. Conforming to state statute, the superintendent credits most of the federal forest funds *before* determining the amount of state equalization money to be distributed by the state to its school districts. Appellants contend that the superintendent should not credit the school districts with receipt of the funds before determining the state contribution, but rather that the district should be entitled to the state contribution and then, in addition, the federal forest moneys.

The trial court held the Superintendent of Public Instruction's distribution of the money to be both constitutional and within the federal and state statutory schemes —a decision which we affirm.

Plaintiff school districts make two principal contentions: (1) that federal statutes which make the money available to the schools of this state specify that the money shall be distributed only to the school districts which have national forests within their territorial boundaries, and (2) that to include federal forest funds in the general statewide equalization formula spreads the benefits to the entire state and thus deprives the districts designated by federal law from the very benefits intended to be granted them. This method of distribution, they claim, operates to deprive them of equal protection of the laws under the Fourteenth Amendment, and contravenes the statute which makes the money available. Further, the present system, it is contended, deprives plaintiff school districts of the protection of the supremacy clause of the federal constitution (U.S. Const. art. 6) which, they assert, makes the act of Congress in this instance supreme and controlling.

Plaintiffs' position, while not without merit, we think, expresses neither the sole nor the more persuasive construction of the statutes. National forest funds come to the state through 16 U.S.C. § 500 (1960), first enacted in 1908 and subsequently amended from time to time so as to read:

Twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State in which such national forest is situated, to be expended as the State legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated: *Provided,* That when any national forest is in more than one State or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein. In sales of logs, ties, poles, posts, cordwood, pulpwood, and other forest products the amounts made available for schools and roads by this section shall be based upon the stumpage value of the timber.

The state distributes this money to the schools principally upon the basis of two statutes, RCW 36.33.110 and RCW 28A.41.130, the first of which refers directly to the forest funds and to the statute from which they are derived:

The state treasurer shall turn over to the treasurers of the counties within United States forest reserves, the amount of money belonging to them, received from the federal government from such reserves, in accordance with Title 16, section 500, United States Code. Where the reserve is situated in more than one county the money shall be distributed in proportion to the area of the counties interested, and to that end the state treasurer is authorized and required to obtain the necessary information to enable him to make the distribution on such basis.

County commissioners of the respective counties to which the money is distributed are authorized and directed annually to distribute not less than fifty percent of said money to each school district within each such county *according to the proportional number of weighted students enrolled in each such school district during the immediate preceding school year as certified by the*

county school superintendent of schools or the intermediate district superintendent of schools as the case may be . . .

RCW 36.33.110.

■ In the second statute (RCW 28A.41.130), to achieve a fair measure of equality, the state has adopted an equalization system of equal funding based on a formula for each weighted student in each district. It is the legislature and the Superintendent of Public Instruction who have the most direct and immediate responsibility for carrying out the state's constitutional policy of providing for the education of all children—although all public offices are bound by it. Under the federal and state statutes mentioned, the legislature and superintendent have designed a system for distribution of national forest funds in consonance with the state's duty under the constitution.

Under RCW 28A.41.130, the funds coming under the jurisdiction of the Superintendent of Public Instruction are allocated according to the state's equalization scheme:

> From those funds made available by the legislature for the current use of the common schools, other than the proceeds of the state property tax, the state superintendent of public instruction shall distribute annually as provided in RCW 28A.48.010 to each school district of the state operating a program approved by the state board of education, *an amount which, when combined with the following revenues, will constitute an equal guarantee* in dollars for each weighted student enrolled, based upon one full school year of one hundred eighty days:
>
> . . .
>
> (5) Eighty-five percent of the receipts from federal forest revenues distributed to school districts pursuant to RCW 36.33.110;

(Italics ours.)

In treating 85 per cent of the forest funds paid over to the affected school districts as a part of the state general scheme of equalization, the Superintendent of Public Instruction is complying with the letter and the spirit of the

statutes controlling the distribution of equalization money and in obedience to the constitutional mandate that:

It is the paramount duty of the state to make ample provision for the education of all children residing within its borders . . .

Const. art. 9, § 1.

Significantly, we find no federal legislation which appears to directly preclude distribution of federal moneys to the schools in the manner directed by state statute or with the Superintendent of Public Instruction's system of equalization here under challenge.

Plaintiff school districts invite our attention to three cases, *Shepheard v. Godwin*, 280 F. Supp. 869 (E.D. Va. 1968); *Hergenreter v. Hayden*, 295 F. Supp. 251 (D. Kan. 1968); and *Douglas Independent School Dist. 3 v. Jorgenson*, 293 F. Supp. 849 (D.S.D. 1968), dealing with what are commonly described as "federal impact funds"—funds paid directly by the United States pursuant to 20 U.S.C. §§ 236-40 (1969), to school districts which have been subjected to drastic increases in enrollment because of federal activity such as army posts, air bases, naval shipyards, training stations, and the like. Neither these cases nor the statutes with which they deal appear applicable here and provide little, if any, rationale for the solution of the instant question. Had Congress intended to rest the distribution of forest funds upon the idea of the direct impact of a federal activity upon the enrollment of the affected school districts, it could easily have done so. That it retained the two kinds of distribution side by side throughout the years serves more to support than to detract from the Superintendent of Public Instruction's method and system now under examination.

The Supreme Court of Oklahoma has passed directly on this question and the very statute (16 U.S.C. § 500 (1960)) from which it arises. *State v. State Bd. of Educ.*, 293 P.2d 583 (Okla. 1956), discussed the same question as we have before us, *i.e.*, whether Congress, in making federal forest

funds available to the schools, intended to preclude the state from taking these funds into consideration when allocating state school equalization moneys to all of the state's districts. In that case, the court affirmed and adhered to the rationale of its earlier decision in *State ex rel. Bds. of Educ. v. State Bd. of Educ.*, 289 P.2d 653 (Okla. 1955), holding it proper to reduce state aid to the school districts by the amount of federal flood control rentals paid by the United States to certain districts. 33 U.S.C. § 701c-3. The court said (289 P.2d at 655):

> [W]e do not construe the Federal Statute as attempting to control the method by which this State apportions its own funds appropriated for Equalization Aid to its schools. There is, therefore, no violation of the Federal Statute.

■ Finally, it should be noted that the modus operandi adopted by the Superintendent of Public Instruction, in including the amount of national forest funds in and treating them as a part of the state's total equalization scheme, finds strong decisional support in *King County v. Seattle School Dist. 1*, 263 U.S. 361, 68 L. Ed. 339, 44 S. Ct. 127 (1923), where, referring to the very statute involved here, the court said that:

> [it] does not direct any division of the money between schools and roads. Its language above quoted indicates an intention on the part of Congress that the state in its discretion may prescribe by legislation how the money is to be expended. No distribution to the appellee or any other school district is required. The public schools and public roads are provided and maintained by the State or its subdivisions, and the moneys granted by the United States are assets in the hands of the State to be used for the specified purposes as it deems best. See *State v. Callvert*, 34 Wash. 58, 61.

■ We are of the opinion, therefore, that 16 U.S.C. § 500 (1960) which makes available national forest funds to school districts of the state having national forests within their areas, does not preclude the Superintendent of Public Instruction from including them in state equalization

funds. In carrying out his mission to implement the state's paramount duty of making ample provision for the education of all children residing within the state's border and in accordance with the statutes of the state, national forest funds may be regarded as a part of the state's equalization funds. The Superintendent of Public Instruction is thus empowered to take these national forest funds into consideration and deduct them in whole or in part as the state statutes allow from the state equalization funds distributed to the school districts of the entire state.

Arguments advanced under the Fourteenth Amendment we find to be without merit and, having found no inconsistency between federal statute and state law, we see no issue related to the supremacy clause of the United States Constitution.

Affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.