[Civ. No. 19664. Third Dist. Apr. 3, 1981.]

SAN MIGUEL JOINT UNION SCHOOL DISTRICT, Plaintiff and Respondent, v.
JACQUE T. ROSS, as Division Chief, etc., et al., Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, and M. Anthony Soares, Deputy Attorney General, for Defendants and Appellants.

Peter C. Carton for Plaintiff and Respondent.

OPINION

EVANS, Acting P. J.—Plaintiff, San Miguel Joint Union School District (District), is considered an impacted District qualified for federal

aid pursuant to Public Law No. 81-874 (64 Stat. 1100 [Sept. 30, 1950]); this as a result of the significant number of students attending classes who are children of parents who live or work on federally owned land not subject to local property taxation.

The federal aid granted is unrestricted and may be used by the District for any educationally related purpose.

In May 1978, the District received in excess of $18,000 in federal impact aid. The funds received were deposited in the District's general fund; they were not in any way restricted, separately identified, or reserved, nor were they required to be so.

Prior to the 1978-1979 fiscal year, California had a comprehensive scheme of school aid known as the "Foundation Program." (See former Ed. Code, § 17300 et seq., now § 14000 et seq.) A revision of that method of school aid was made necessary by the passage of article XIII A, section 4 to the California Constitution (Prop. 13 on the June 6, 1978, ballot commonly known as the Jarvis-Gann initiative) which placed limitation on the taxing power of local agencies. Upon its passage the state responded to that need by enacting school financing "bail out" legislation (Stats. 1978, chs. 292 and 332).

Chapter 332 established a "revenue limit" which was essentially the sum required for operation of the educational programs of the local schools. In order to determine the amount of state aid to be given the local schools, the revenue limit was required to be adjusted by certain enumerated factors. ■ At issue in this proceeding is the factor requiring the reduction of the revenue limit by one-third of the District's general fund and special reserve fund balances to the extent that they were unreserved, unrestricted, and exceeded $50,000 or 5 percent of the District's total revenue.

Although the revenue limit formula did not expressly require reduction of state aid by all or a portion of federal impact aid received by the District, the resulting reduction in this instance accomplished that end.

Federal statutes prohibit the several states from taking federal impact money into consideration in allocating state school aid funds. (20 U.S.C. § 236 et seq.)

California and other jurisdictions have previously attempted to reduce state aid by amounts of federal impact money received[1] and have been challenged in the courts and have been found to be in violation of the federal regulations by reason of the supremacy clause contained in the United States Constitution, article VI, clause 2.

The state in this proceeding concedes its one-third reduction in the District's reserves resulted in the withholding of over $6,000, as the state did not remove from consideration federal impact aid received by the District during that fiscal year.

However, the state argues its action must be held valid considering the financial circumstances of the local taxing powers and the fact the bail out legislation did not specifically require the reduction to include the federal impact aid as had prior legislative efforts. This argument, in light of the prior decisions cited, is specious at best.

The state also earnestly argues the present "bail out" legislation and the resulting reductions in aid are governed by the exception created in *Middletown Sch. Com. v. Board of Regents* (D.R.I. 1977) 439 F.Supp. 1122. Again the argument lacks substance. The *Middletown* case is factually inapposite. It involved incentive programs designed to promote and increase local efforts to raise funds and thereby increase school aid locally. Such is not the case in this instance. The local taxing authorities are powerless to enhance their tax capacity regardless of incentives. The bail out legislation provides supplementary aid to the local district to help reduce the impact from loss of revenue following passage of Proposition 13.

The precipitant to this proceeding is the formula to be applied in determining the amount of state aid to be given to the District. The resulting reduction of state aid was brought about by applying the required factor to local tax revenues which included federal impact aid previously received by the District and held in ending fund balances. To the extent that federal fund amounts were not removed from consideration prior to making the reductions the loss of state revenue to the District must be restored. Any lack of direction in the legislation not to

[1]See California Education Code section 41603. See also *Carlsbad Union Sch. Dist. of San Diego County v. Rafferty* (S.D.Cal. 1969) 300 F.Supp. 434; *Shepheard v. Godwin* (E.D.Va. 1968) 280 F.Supp. 869; *Douglas Independent School District No. 3 v. Jorgenson* (D.S.D. 1968) 293 F.Supp. 849; *Hergenreter v. Hayden* (D.Kan. 1968) 295 F.Supp. 251; *Triplett v. Tiemann* (D.Neb. 1969) 302 F.Supp. 1239.

consider the federal aid in making the reduction is of no consequence. The end result is the consideration. That result violates federal mandate and requires modification of the state grant of school aid.

The state cannot escape the result of a federal prohibition by simply excluding from the language of the bail out legislation any direction not to consider federal impact aids or by attempting to construe the bail out legislation as incentive legislation of the type considered in *Middletown*. Such bootstrapping is not available. The result achieved by application of the factor in this instance to the ending fund balances of the District which included unsegregated federal impact aid funds requires affirmance of the judgment below.

The judgment is affirmed.

Reynoso, J., and Blease, J., concurred.