IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __**June 27, 2016**_____

**NO. 34,008**

**ZUNI PUBLIC SCHOOL DISTRICT #89,**

Petitioner-Appellant,

v.

**STATE OF NEW MEXICO PUBLIC EDUCATION DEPARTMENT and VERONICA GARCIA, SECRETARY OF EDUCATION,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

VanAmberg, Rogers, Yepa, Abeita, Gomez, & Works, L.L.P.
Ronald J. VanAmberg
C. Bryant Rogers
Santa Fe, NM

for Appellant

Public Education Department
Albert V. Gonzales, Deputy General Counsel
Santa Fe, NM

Sutin, Thayer, & Browne, P.C.
Susan M. Hapka
Albuquerque, NM

for Appellees

**OPINION**

**VIGIL, Chief Judge.**

{1} This case presents an issue of first impression under the Public School Finance Act (the Act), NMSA 1978, §§ 22-8-1 to -48 (1967, as amended through 2015). We consider when the New Mexico Public Education Department (the Department) may lawfully deduct federal impact aid funds that a school district receives from the federal government.

{2} The parties filed cross motions for summary judgment in the district court. The district court found that there was no dispute of material fact and, as more fully discussed below, concluded that the Department properly deducted federal impact aid funds it anticipated Zuni Public School District #89 (Zuni) would receive. The district court also concluded that the Department properly made deductions for federal impact aid funds that Zuni actually received, although the deductions were made before the Secretary of the United States Department of Education (DOE) certified that a deduction was permissible. The district court therefore granted summary judgment in favor of the Department. We reverse.

## I.	BACKGROUND

{3}	Zuni filed a petition in the district court alleging in material part that in the 2009-2010 school year,[1] the Department made a deduction for federal impact aid funds it anticipated that Zuni was going to receive from funds it was otherwise entitled to under the Act; that making such a deduction before federal impact aid funds were received violated the Act; that as to federal impact aid funds actually received, the Act allows a deduction of federal impact aid funds only if the funds are authorized "in accordance with" federal law; that under federal law a deduction is only allowed after the DOE Secretary certifies that a state has a school funding system that satisfies federal standards to equalize expenditures for free public education among local school districts; and that, in violation of the Act, the Department deducted Zuni's share of school funding before the DOE Secretary issued its certificate. Zuni asked for a writ of mandamus, declaratory relief, injunctive relief, and class action certification for other school districts who received such deductions.

{4}	The Department filed a motion to dismiss Zuni's petition, arguing that sovereign immunity bars the relief Zuni seeks. The district court denied the motion, but certified its order for an interlocutory appeal, and stayed the proceedings until we

---

[1] Our use of the term "school year" throughout this Opinion coincides with the fiscal year of school districts, which begins on July 1 and ends on June 30 each year.

ruled on the Department's application for an interlocutory appeal. We granted the Department's application for an interlocutory appeal, held that sovereign immunity is not a bar to the relief Zuni seeks, and remanded the case to the district court. *Zuni Pub. Sch. Dist., No. 89 v. N.M. Pub. Educ. Dep't*, 2012-NMCA-048, ¶ 21, 277 P.3d 1252.

{5} On remand, the Department filed a motion for summary judgment. The Department contended that under the undisputed material facts, it properly deducted Zuni's anticipated federal impact aid funds in calculating the funds Zuni was entitled to receive from the State under the Act. Zuni in turn filed a motion for partial summary judgment, asserting that it was entitled to recover the funds the Department withheld, arguing that the Act does not permit the Department to calculate and make deductions from Zuni's state funds based on federal impact aid payments it expected Zuni to receive or before the DOE Secretary has issued its certificate.

{6} The district court granted the Department's motion and denied Zuni's on grounds that, although the Department made a deduction from the state funds Zuni was entitled to receive based on its anticipation that Zuni would receive federal impact aid funds, once the DOE Secretary issued its certificate, the Department was entitled to make an offset for the entire school year, including the "retroactive" offsets that were made before the DOE Secretary's certificate. Zuni appeals.

## II.	DISCUSSION

{7}	The Department again reiterates its argument that Zuni's claims are barred by sovereign immunity. However, we resolved this issue in *Zuni Public School District, No. 89*, 2012-NMCA-048, ¶ 21, and do not revisit this issue here. Zuni's petition and the relief it seeks have not changed. We therefore turn to the merits of this appeal.

### A.	Standard of Review

{8}	On appeal from a grant of summary judgment, our review is de novo when, as in this case, no material issues of fact exist and the appeal raises only a question of law. *Harris v. Vasquez*, 2012-NMCA-110, ¶ 9, 288 P.3d 924. In addition, this case requires us to engage in statutory interpretation, which presents a question of law that is also subject to de novo review. *Id.* ¶ 10. When construing statutes, it is our duty to determine and give effect to the Legislature's intent. *Little v. Jacobs*, 2014-NMCA-105, ¶ 7, 336 P.3d 398. To determine the legislative intent, we examine the "plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *In re Borland*, 2012-NMCA-108, ¶ 9, 288 P.3d 912 (internal quotation marks and citation omitted). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Id.* (internal

4

quotation marks and citation omitted). Finally, we read all sections of the statute together so every section is given effect. *Llena v. Montoya*, 2013-NMCA-048, ¶ 11, 299 P.3d 456.

**B.    Analysis**

{9}    The material facts in this case are not in dispute. The Act guarantees that each school district in New Mexico will receive sufficient funds from the State to meet its operating budget. Section 22-8-25(A) ("The state equalization guarantee distribution is that amount of money distributed to each school district to ensure that its operating revenue, including its local and federal revenues as defined in this section, is at least equal to the school district's program cost."). In order to accomplish this purpose, the Legislature has adopted a formula called the State Equalization Guarantee Distribution (SEG) under Section 22-8-25, which is implemented by the Department. Section 22-8-25(D). Generally speaking, and in the context of this case, the SEG requires the Department to distribute to each school district its total program cost, minus a deduction for federal impact aid funds the school district receives. Section 22-8-25(D) and (F). Schools operate on a fiscal year basis, which begins on July 1 and ends on June 30 of the following year. Each month the Department distributes to every school district one-twelfth of the funds it is entitled to receive under the SEG formula.

{10} In the 2009-2010 school year, Zuni received federal impact aid funds in January and March 2010. The dispute in this case is not whether the Department could make a deduction for those funds, but when it could make the deduction. The Department calculated the amount of federal impact aid funds it anticipated Zuni would receive, and commencing on July 1, 2009, made a monthly, pro-rata deduction of the funds Zuni was otherwise entitled to receive. Zuni contends that the Department was not authorized to make any deduction until the DOE Secretary issued its certificate that New Mexico's SEG satisfied federal standards. The certification was made on April 26, 2010, ten months into the school year, and after the Department had already deducted $4,004,349.37 of funds that Zuni would have otherwise received. The certificate was for the period from July 1, 2009 through June 30, 2010. We begin our analysis by examining what is required by New Mexico's SEG formula.

**1.    New Mexico's SEG Formula**

{11} The SEG was established by the Legislature to guarantee that the amount of money distributed to each school district is at least equal to the school's total program cost. As applied to this case, the SEG directs that the total program cost of the school district is first determined and "federal revenues as defined" are then calculated. Section 22-8-25(D)(1)-(5). The "federal revenues" are then deducted from the total

6

program cost, Section 22-8-25(D)(6), and "[t]he amount of the [SEG] to which a school district is entitled is the balance remaining[.]" Section 22-8-25(F).

{12}     The SEG formula requires "federal revenues as defined" to be calculated and then deducted from the total program cost of a school district. We therefore turn our attention to this requirement. Section 22-8-25(C) defines "federal revenue" and the provision applicable here is Section 22-8-25(C)(2) that defines "federal revenue" to mean:

> [S]eventy-five percent of grants from the federal government as assistance to those areas affected by federal activity authorized *in accordance with* Title 20 of the United States Code, commonly known as 'PL 874 funds' [P.L. No.81-874, 64 Stat. 1100 (1950)] or 'impact aid'.

(Emphasis added.)

State law therefore requires that P.L. 81-874 or "impact aid" funds be authorized "in accordance with" Title 20 of the United States Code before they can be considered as "federal revenue" under Section 22-8-25(D)(5) and deducted under Section 22-8-25(D)(6). We therefore turn our attention to the federal statute. We first discuss the history behind federal impact aid funds, and then we examine the pertinent statutes.

**2.     Federal Impact Aid Funds**

{13}     Congress enacted P.L. 81-874 as "impacted area" legislation in 1950, to assist school districts in providing adequate educational facilities that were adversely

affected by a federal presence. *See Shepheard v. Godwin*, 280 F. Supp. 869, 871-72 (E.D. Va.1968) (discussing conditions that led Congress to adopt P.L. 81-874); *Hergenreter v. Hayden*, 295 F. Supp. 251, 252 (D. Kan. 1968) (mem.) (same); *Douglas Indep. Sch. Dist. No. 3 v. Jorgenson*, 293 F. Supp. 849, 850 (D.S.D. 1968) (same). An "impacted area" includes, for example, an area whose school population has been burdened because of attendance by a large number of federal employees' children, and at the same time is losing school tax revenues because of the United States governmental immunity from land taxes. *See Shepheard*, 280 F. Supp. at 871 (stating these were factors that led Congress to adopt P.L. 81-874); *Hergenreter*, 295 F. Supp. at 252 (same); *Douglas Indep. Sch. Dist. No. 3*, 293 F. Supp. at 850 (same).

{14}  Notwithstanding Congress's express intention that impact aid funds were to be used only to compensate impacted local school districts, and not to be used or applied to compensate a state in any respect, fifteen states began offsetting the amount of impact aid funds received by school districts by reducing the state aid allocated to those districts. *See Shepheard*, 280 F. Supp. at 874-75 (quoting House Report No. 1814 (August 5, 1966)). Congress reacted by enacting a penalty that reduced impact aid funds in proportion to any such deduction made by a state. *Id.* (quoting 20 U.S.C. § 240(d)(Supp. 1967)). In addition, legislation enacted by Virginia, Kansas, and South Dakota, under which a percentage of the federal impact aid funds received by

a school district was deducted from the funds allocated to the school district by the state, was declared unconstitutional. Federal courts in those states held that such legislation violated the supremacy clause of the United States Constitution because the federal legislation mandated that the impact aid funds were exclusively for supplementing impacted local school revenue sources and not to lessen state efforts in funding schools. *See id.*; *Hergenreter*, 295 F. Supp. at 255-56; *Douglas Indep. Sch. Dist. No. 3*, 293 F. Supp. at 853-54.

{15} P.L. 81-874 evolved into the Impact Aid Act, 20 U.S.C. §§ 7701-14 (1994, as amended through 2015), which retained many of its original features but at the same time recognized that, where a state seeks to equalize per-pupil expenditures, an offset of impact aid funds may be warranted. *Zuni Public School District No. 89 v. Department of Education*, 550 U.S. 81 (2007) explained that the Impact Aid Act:

> [P]rovides financial assistance to local school districts whose ability to finance public school education is adversely affected by a federal presence. Federal aid is available to districts, for example, where a significant amount of federal land is exempt from local property taxes, or where the federal presence is responsible for an increase in school-age children (say, of armed forces personnel) whom local schools must educate. The statute typically prohibits a [s]tate from offsetting this federal aid by reducing its own state aid to the local district. If applied without exceptions, however, this prohibition might unreasonably interfere with a state program that seeks to equalize per-pupil expenditures throughout the [s]tate, for instance, by preventing the state program from taking account of a significant source of federal funding that some local school districts receive. The statute consequently contains an exception that permits a [s]tate to compensate for federal

9

impact aid where the Secretary of Education determines and certifies that the [s]tate has in effect a program of [s]tate aid that *equalizes* expenditures for free public education among local school districts in the [s]tate.

*Id.* at 84-85 (alterations, internal quotation marks, and citation omitted).

{16}     We now turn to the applicable federal statute, 20 U.S.C. § 7709 (2015), which we hereinafter refer to as Section 7709.[2] Under Section 7709(a)(1) a state "may not" consider impact aid payments in determining the amount of state funds to be allocated to a school district. In addition, a state "may not" make state funds available to a school district "in a manner that results in less [s]tate [funds] to [a school district] that is eligible for [impact aid funds] than such [school district] would receive if such [school district] were not so eligible." Section 7709(a)(2). Section 7709(a) therefore prohibits a state from offsetting impact aid funds in allocating state funds to public school districts "[e]xcept as provided in subsection(b)[.]" Section 7709(b)(1) in turn provides in pertinent part that a state may offset impact aid funds "for any fiscal year *if* the [DOE] Secretary determines, and certifies under subsection (c)(3)(A) of this

---

[2] The Every Student Succeeds Act, P.L. No. 114-95, 129 Stat. 1802 (2015) is comprehensive legislation adopted by Congress that amends certain aspects of Section 7709. However, we do not concern ourselves with this Act, as the amendments that affect Section 7709 do not take effect until the beginning of fiscal year 2017. Every Student Succeeds Act, P.L. No. 114-95 § 5(d) (stating that with respect to Impact Aid under Title VII of the Elementary and Secondary Education Act of 1965, 20 U.S.C. §§ 6301-7981 (1965, as amended through 2015), "the amendments made by this Act shall take effect with respect to appropriations for use under such title beginning fiscal year 2017, except as otherwise provided in such amendments").

section, that the [s]tate has in effect a program of [s]tate aid that equalizes expenditures for free public education among local educational agencies in the [s]tate." (Emphasis added.) Under Section 7709(c)(3)(A), if the DOE Secretary determines that a program of state aid qualifies, "the Secretary shall . . . certify the program and so notify the [s]tate." Finally, relevant to this case, Section 7709(d)(2) expressly states, "[a s]tate may not take into consideration payments under this subchapter before such [s]tate's program of [s]tate aid has been certified by the [DOE] Secretary under subsection (c)(3) of this section."

### 3.   The Deductions Were Not Allowed

{17}   Applying settled principles of statutory construction, we conclude that the deductions made by the Department in this case were not authorized by the Act. The SEG formula, which the Legislature directed the Department to follow, is clear. After calculating Zuni's "total program cost" for the 2009-2010 school year, the Department was allowed to make a deduction for the amount of Zuni's "federal revenues," and the balance remaining was the SEG distribution, which Zuni was entitled to receive from the Department for the 2009-2010 school year. *See* § 22-8-25(D)(1)-(6). However, the allowable deduction was limited to "federal revenues as defined," Section 22-8-25(D)(5), and such revenues are defined as federal "impact aid" funds "authorized *in accordance with* Title 20 of the United States Code[.]"

11

Section 22-8-25(C)(2) (emphasis added). Here, if the federal impact aid funds were not authorized "in accordance with" Title 20 of the United States Code, they failed to satisfy the definition of "federal revenues" under state law and could not be deducted in computing Zuni's SEG. Whether the Department could deduct those funds from Zuni's "total program cost" in computing Zuni's SEG depends on how federal law treats the impact aid funds Zuni received.

{18} The DOE Secretary certified, pursuant to federal law, that for the 2009-2010 school year, New Mexico had in effect a program of state aid to equalize expenditures for free public education among local school districts. This certification meant that the Department could offset Zuni's impact aid funds in allocating funds to Zuni under the SEG. *See* 20 U.S.C. § 7709. The dispute here was not whether the Department could do so, but when it could do so. Federal law on this question is clear: the Department was prohibited from taking into account Zuni's impact aid payments before the DOE Secretary issued the certification on April 26, 2010. *See* 20 U.S.C. § 7709(d)(2).

{19} Under the SEG, the Department was obligated to provide Zuni with an amount of money to meet its operating budget, but that did not happen here. Instead, the Department made monthly deductions based on federal impact aid funds it anticipated, without certification from the DOE Secretary, that Zuni would in fact be

12

entitled to receive such funds. The Department cannot point to any provision in the SEG or the Act that allows deductions for impact aid funds that are merely anticipated, and anticipated funds do not satisfy the SEG's definition of "federal revenue." For January and March 2010, the applicable statutes did not authorize the Department to deduct anticipated impact aid funds until the DOE Secretary issued its certificate on April 26, 2010. There is nothing in the SEG or Title 20 of the United States Code that allows for a "retroactive" deduction after the DOE Secretary issues its certificate. Federal law expressly directs that a state may not take into consideration impact aid payments before the DOE certification. *See* 20 U.S.C. § 7709(d)(2) ("A [s]tate may not take into consideration payments under this subchapter before such [s]tate's program of [s]tate aid has been certified by the [DOE] Secretary[.]").

{20}     From the beginning of the school year until the DOE Secretary certificate was issued on April 26, 2010, Zuni and the children it serves were deprived of $4,004,349.37 of the funds they were entitled to receive under the SEG. We do not know how this impacted the school district or the quality of education the children received, but we do know that for ten months of the school year the effect was inconsistent with the Legislature's guarantee to Zuni and the children that they would receive sufficient funds from the Department to meet the operating budget.

{21}    We recognize that due to the timing of the DOE Secretary certificate, and how the Department distributes state funds to the school districts, it is possible that Zuni could receive more funds than it is entitled to receive under the SEG. The Public School Finance Act anticipates such a result and provides, "In the event that a school district or charter school has received more of the [SEG distribution] than its entitlement, a refund shall be made by the school district or charter school to the state general fund." Section 22-8-25(G). Even in such a scenario, however, Zuni and the children it serves would have received, in a timely fashion, the funds it is entitled to under the SEG as intended by the Legislature. We have considered the Department's remaining arguments and conclude that they are not persuasive in light of the clear statutory language before us.

## III.    CONCLUSION

{22}    The order of the district court granting summary judgment to the Department is reversed and the case is remanded for further proceedings consistent with this Opinion.

{23}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

14

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**M. MONICA ZAMORA, Judge**